CLIFFORD D. SETHNESS (Bar No. 212975)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: 213.612.2500
Fax: 213.612.2554
csethness@morganlewis.com

ERIC MECKLEY, SBN 168181
JENNIFER P. SVANFELDT, SBN 233248
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: 415.442.1000
Facsimile: 415.442.1001
emeckley@morganlewis.com
jsvanfeldt@morganlewis.com

*Attorneys for Plaintiff*
PACIFIC MARITIME ASSOCIATION

FILED
OCT 22 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PACIFIC MARITIME ASSOCIATION, a California corporation,

Plaintiff,

vs.

INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10 and INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 34, unincorporated labor organizations,

Defendants.

Case No. C13-4887 WHO

**COMPLAINT FOR CONFIRMATION AND ENFORCEMENT OF LABOR ARBITRATION AWARDS**

Plaintiff PACIFIC MARITIME ASSOCIATION, for its Complaint against Defendants INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10, and INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 34 herein, alleges as follows:

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 24456802.1

COMPLAINT

## JURISDICTION

1. This is an action to confirm and enforce labor arbitration awards issued pursuant to a collective bargaining agreement. This action arises under Section 301 of the Labor Management Relations Act of 1947, as amended (29 U.S.C. § 185). Jurisdiction is conferred upon this Court by the provisions of that section.

2. Plaintiff PACIFIC MARITIME ASSOCIATION ("PMA") is, and at all times mentioned herein was, a non-profit corporation organized and existing under and by virtue of the laws of the State of California. PMA maintains its principal office at 555 Market Street, San Francisco, California.

3. PMA is a multi-employer collective bargaining association whose members include stevedoring companies, terminal operators, and maintenance and repair contractors that employ dockworkers, such as longshoremen, in the San Francisco Bay Area and throughout the United States Pacific Coast. PMA represents these employers in their collective bargaining relations with the labor organizations representing dockworkers in the negotiation of collective bargaining agreements and the administration and enforcement of the provisions thereof. PMA and its members are, and at all times mentioned herein were, employers in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act of 1947 (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

4. The International Longshore and Warehouse Union ("ILWU") is an unincorporated association commonly known as a labor union and maintains its principal offices in San Francisco, California. The ILWU is, and at all times mentioned herein was, the duly certified collective bargaining representative for dockworkers employed by members of PMA on the Pacific Coast. The ILWU, on behalf of itself and each of its locals in California, Oregon and Washington, negotiates and enters into the collective bargaining agreements described below with PMA, covering terms and conditions of employment of dockworkers employed by PMA members on the Pacific Coast. The ILWU is, and at all times mentioned herein was, a labor

organization representing employees in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

5. Defendant International Longshore and Warehouse Union, Local 10 ("Local 10") is an unincorporated association commonly known and referred to as a labor union and maintains its principal offices in San Francisco, California. Local 10 is a local of the ILWU and is, and at all times mentioned herein has been, a representative of longshoremen employed by members of PMA in the San Francisco Bay Area Ports. As such, Local 10 is, and at all times mentioned herein was, a labor organization representing employees in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C § 185).

6. Defendant International Longshore and Warehouse Union, Local 34 ("Local 34") is an unincorporated association commonly known and referred to as a labor union and maintains its principal offices in San Francisco, California. Local 34 is a local of the ILWU and is, and at all times mentioned herein has been, a representative of marine clerks employed by members of PMA in the San Francisco Bay Area Ports. As such, Local 34 is, and at all times mentioned herein was, a labor organization representing employees in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C § 185).

## FACTUAL BACKGROUND

7. The ILWU, on behalf of its longshore locals in California, Oregon and Washington, including Defendants Local 10 and Local 34, and all employees performing work thereunder, and PMA on behalf of its members, entered into the Pacific Coast Longshore & Clerks' Agreement, effective as of July 1, 2008 (hereinafter the "PCL&CDA"). The PCL&CA is

COMPLAINT

written in two documents, the PACIFIC COAST LONGSHORE CONTRACT DOCUMENT 2008-2014 (the "PCLCD"), which covers ILWU Local 10 longshoremen employed by PMA members in the San Francisco Bay Area, and the PACIFIC COAST CLERKS' CONTRACT DOCUMENT 2008-2014 (the "PCCCD"), which covers ILWU Local 34 marine clerks employed by PMA members in the San Francisco Bay Area. The PCLCD and PCCCD are, and at all times mentioned herein were, in full force and effect. The relevant provisions of the PCLCD (governing longshore workers) and the PCCCD (governing marine clerks) pertaining to no strikes/work stoppages and the grievance/arbitration procedures are substantively the same.

8. Section 11 of the PCLCD and Section 11 of the PCCCD, entitled "NO STRIKES, LOCKOUTS, AND WORK STOPPAGES," provide, in relevant part:

11.1 There shall be no strike, lockout or work stoppage for the life of this Agreement.

11.2 The Union or the Employers, as the case may be, shall be required to secure observance of this Agreement.

11.3 How work shall be carried on.

11.31 In the event grievances or disputes arise on the job, all men and gangs shall continue to work as directed by the employer in accordance with the specific provisions of the Agreement or if the matter is not covered by the Agreement, work shall be continued as directed by the employer.

11.5 Picket Lines.

11.51 Refusal to cross a legitimate and bona fide picket line, as defined in this paragraph, shall not be deemed a violation of this Agreement. Such a picket line is one established and maintained by a union, acting independently of the ILWU longshore locals, about the premises of an employer with whom it is engaged in a bona fide dispute over wages, hours or working conditions of employees, a majority of whom it represents as the collective bargaining agency. Collusive picket lines, jurisdictional picket lines, hot cargo picket lines, secondary boycott picket lines and demonstration picket lines are not legitimate and bona fide picket lines within the meaning of this Agreement.

11.52 If an ILWU longshore local located within the confines of the United States whose members are not covered by this Agreement is engaged in a legitimate, bona fide, nonjurisdictional and noncollusive strike concerning wages, hours or working conditions of its members, no longshoreman under this Agreement shall be required to perform work hereunder respecting cargo that normally, without such strike, would be handled by members of such ILWU longshore local but which has been handled or is destined to be handled by other workers engaged in strikebreaking activities under established and legitimate trade union principles.

9. Section 17 of the PCLCD and Section 17 of the PCCCD, entitled "JOINT LABOR

COMPLAINT

RELATIONS COMMITTEES, ADMINISTRATION OF AGREEMENT AND GRIEVANCE PROCEDURES," provide a mandatory procedure for the presentation, adjustment and settlement of grievances, with binding arbitration as the final step. Under each Section 17, disputes are first heard by the Joint Port Labor Relations Committee ("JPLRC"), which is comprised of employer and union representatives, each side having an equal vote. If the JPLRC cannot agree, either side may refer the dispute to the Area Arbitrator for a decision.

10. Each Section 17 provides, in relevant part:

17.15 The grievance procedure of this Agreement shall be the exclusive remedy with respect to any disputes arising between the Union or any person working under this Agreement or both, on the one hand, and the Association or any employer acting under this Agreement or both, on the other hand, and no other remedies shall be utilized by any person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted.

17.24 In the event that the Employer and Union members of any Joint Port Labor Relations Committee shall fail to agree upon any question before it, such question shall be immediately referred at the request of either party to the appropriate Joint Area Labor Relations Committee for decision.

17.25 In the event that the Employer and Union members of any Joint Area Labor Relations Committee fail to agree on any question before it, such question shall be immediately referred at the request of either party to the Area Arbitrator for hearing and decision, and the decision of the Area Arbitrator shall be final and conclusive except as otherwise provided in Section 17.26 [relating to appeals to the Joint Coast Labor Relations Committee].

17.261 Any decision of a Joint Port or Joint Area Labor Relations Committee or of an Area Arbitrator claimed by either party to conflict with this Agreement shall immediately be referred at the request of such party to the Joint Coast Labor Relations Committee (and, if the Joint Coast Labor Relations Committee cannot agree to the Coast Arbitrator, for review). The Joint Coast Labor Relations Committee, and if it cannot agree, the Coast Arbitrator, shall have the power and duty to set aside any such decision found to conflict with the Agreement and to finally and conclusively determine the dispute. It shall be the duty of the moving party in any case brought before the Coast Arbitrator under the provisions of this Section 17.261 to make a prima facie showing that the decision in question conflicts with this Agreement, and the Coast Arbitrator shall pass upon any objection to the sufficiency of such showing before ruling on the merits.

17.55 All decisions of the arbitrators, except as provided in Sections 17.261 and 17.6, shall be final and binding upon all parties. Decisions shall be in writing signed by the arbitrator and delivered to the respective parties.

17.57 All decisions of arbitrators shall be observed and/or implemented. No decision of an Area Arbitrator, interim or formal, can be appealed unless it is observed and/or implemented.

11. Local 10 and Local 34 and their respective officers and the longshoremen and

clerks they represent are under a duty to abide by the above-mentioned provisions of the PCLCD.

## COUNT ONE

12. Independent contractors who are engaged in the business of commercial trucking as sole proprietors ("independent truckers") transport goods that arrive and are unloaded at the port.

13. Plaintiff is informed and believes that the independent truckers are dissatisfied with emissions requirements and the amount of time required to pick up or to drop off cargo at marine terminals operated at the Port of Oakland (the "Port"). Those terminals include the following, which are operated by PMA members: Oakland International Container Terminal, Ports America Outer Harbor Terminal, and the Seaside Transportation Services Terminal (collectively, the "Terminals"). Beginning in August 2013, the independent truckers have been congregating near the entrances to the Terminals to protest emissions requirements and wait times. The independent truckers have engaged in conduct such as blocking or slowing traffic attempting to enter and leave the Terminals, including by blocking intersections with people and/or trucks, all of which has been in violation of state and local law.

14. As a result of the illegal conduct by the independent truckers, the City of Oakland initiated a lawsuit in the Superior Court of California for the County of Alameda against two individuals who are independent truckers and several Doe defendants, City of Oakland v. Cesar Parra, et al., Case Number RG13693908. The City of Oakland lawsuit alleged a nuisance and sought injunctive relief.

15. On October 17, 2013, the Alameda Superior Court issued an Order to Show Cause and Temporary Restraining Order against defendants in the City of Oakland lawsuit ordering, among other things, that defendants "and each of them, their agents, officers, employees, and representatives, and all persons acting or in concert or participating with them, are enjoined from blocking ingress into or egress from, or the passage of vehicles or persons through, Port facilities including but in no way limited to passage of vehicles or persons into or out of Port terminals, in violation of California Vehicle Code section 21950(b) (unnecessarily stopping or delaying traffic

in a marked or unmarked crosswalk) 21954 (failure to yield to vehicles), 21955 (crossing other than in a crosswalk), or 21956 (walking other than on left edge of roadway) or Oakland Municipal Code section 10.24.030 (illegally crossing street)."

16. On October 21, 2013, protestors appeared at the Terminals. Plaintiff is informed and believes that these protestors included the independent truckers and members of the "Occupy" movement. Oakland Police Department officers were present on foot and in vehicles at the gates to assure access to the Terminals. The protestors were positioned away from the gates. The demeanor of the police and the protestors was non-threatening.

17. Local 10 longshoremen refused to enter the Terminals and refused to perform any work on the first shift of October 21, 2013, resulting in a shutdown of operations at the Terminals, including operations for loading and unloading vessels and for moving cargo around the container yards.

18. Local 34 marine clerks were working during the morning of October 21, 2013, but by mid-morning had stopped working and exited the terminals.

19. PMA filed a grievance against Local 10 under the PCLCD, alleging that it was engaging in a work stoppage in violation of Section 11. Terry Lane, the Area Arbitrator for the San Francisco Bay Area under the PCLCD, conducted a hearing early on the morning of October 21, 2013, at which PMA and Local 10 presented evidence and argument. Arbitrator Lane then issued Decision NCAA-0060-2013, in which he found as follows:

> 1. Longshoreman shall enter the terminal and go to work as ordered by the employer.
>
> 2. There was no immediate threat to the health and safety of longshoremen due to the presence of protestors or police at the gate access at Ports America Outer Harbor, Seaside Transportation Services and Oakland International Container Terminal.
>
> 3. There was not standby time payable.
>
> 4. This was a bona fide health and safety dispute.

20. Local 10 refused to abide by Decision NCAA-0060-2013 and continued its illegal work stoppage during the first shift. PMA immediately returned to Arbitrator Lane, who

conducted a second hearing at which PMA and Local 10 again presented evidence and argument. Arbitrator Lane then issued Decision NCAA-0061-2013, in which he found as follows:

> 1. ILWU Local 10, Officials and members, are guilty of a violation of Section 17.57 for failing to implement Interim Decision NCAA-0060-2013.
>
> 2. ILWU Local 10, Officials and members, are in violation of Section 11.1 due to no work being performed on the *Barge Luna Rosa* at PAOH, the *Ever Devote* at STS, the *Dresden Express* and *Barge M-580* at OICT, and the yard at OICT.
>
> 3. ILWU Local 10, Officials and members, shall cease and desist failing to implement Area Arbitration Decision NCAA-0060-2013.
>
> 4. The evidence is that the local grievance machinery has failed to work to resolve this dispute as defined in Section 17.282.

21. Additionally, PMA filed a grievance against Local 34 under the PCCCD, alleging that it was engaging in a work stoppage in violation of Section 11. Terry Lane, the Area Arbitrator for the San Francisco Bay Area under the PCCCD, conducted a hearing on October 21, 2013, at which PMA and Local 34 presented evidence and argument. Arbitrator Lane then issued Decision NCAA-0062-2013, in which he found as follows:

> 1. The protestors at PAOH, STS, and TraPac Terminals are not a legitimate and bona fide picket line meeting the requirements of Section 11.51.
>
> 2. ILWU Local 34, its officials and members, are guilty of a violation of Section 11.1 for stopping work at STS, TraPac, and PAOH Terminals.

22. On October 21, 2013, per Section 17.261 of the PCLCD, the Joint Coast Labor Relations Committee ("CLRC") affirmed the Area Arbitrator's awards, through the minutes of CLRC Meeting No. 22-13, stating as follows:

> The Employers stated that they called for this telephone meeting pursuant to PCL&CA Section 17.282, following the issuance of Area Arbitration decisions NCAA-60-2013, NCAA-61-2013 and NCAA-62-2013. The Employers advised the Union that following the Area Arbitrator's rulings earlier today the Local 10 and Local 34 workforce failed to return to work, effectively shutting down numerous vessel and gate operations in the Port of Oakland.
>
> Following further discussion and a review of the Area Arbitration Awards, the Employers made the following motions:
>
> 1) That Area Arbitration Awards NCAA-60-2013, NCAA-61-2013 and

NCAA-62-2013 have not been complied with, as required by Section 17.57 of the PCL&CA.

2) That the CLRC affirm Area Arbitration Awards NCAA-60-2013, NCAA-61-2013 and NCAA-62-2013.

3) That the Locals are required to secure conformance to the awards.

4) That protests or demonstrations at Oakland marine facilities by truckers, or groups or individuals in support of the truckers, are not bona-fide picket lines (PCL&CA Section 11.51) and shall not be honored by the ILWU workforce, and that to honor such demonstrations as picket lines is a violation of PCL&CA Section 11.1.

The Union voted "Yes"

The Union reserved its locals' right to stand-by under Section 11.41 should conditions significantly change.

23. Local 10's work stoppage violates the PCLCD and the Area Arbitrator's awards as affirmed by the CLRC. Local 10's contract violations have interfered with PMA members' ability to engage in cargo handling operations at the Port of Oakland and have resulted in significant delays and costs to the customers of PMA's members. Without an enforcement order from this Court, it is reasonably likely that Local 10 will resume its work stoppage.

24. Local 34's work stoppage violates the PCCCD and the Area Arbitrator's awards as affirmed by CLRC. Local 34's contract violations have interfered with PMA members' ability to engage in cargo handling operations at the Port of Oakland and have resulted in significant delays and costs to the customers of PMA's members. Without an enforcement order from this Court, it is reasonably likely that Local 34 will resume its work stoppage.

25. NCAA-60-2013, NCAA-61-2013 and NCAA-62-2013 are final and binding decisions, which have been affirmed by the Coast Labor Relations Committee. Local 10 has not complied with or implemented the awards. Local 34 has not complied with or implemented the awards.

WHEREFORE, PMA prays for judgment against Defendants ILWU Local 10 and ILWU Local 34 as follows:

1. That the Court enter an order confirming and enforcing Area Arbitrator Awards NCAA-0060-2013, NCAA-0061-2013 and NCAA-0062-2013, as affirmed by the

Coast Labor Relations Committee.

2. That Local 10 and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation with them, be permanently enjoined and restrained:

   (a) From failing to comply with the above-referenced awards;

   (b) From failing to enforce and implement the above-referenced awards; and

   (c) From directly or indirectly engaging in any combination, agreement, arrangement or conspiracy to do the acts, or any of them, so enjoined.

3. That Local 10 and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation with them, be permanently enjoined and restrained from continuing, doing, or attempting to do, or permitting or causing to be continued or done, directly or indirectly, by any means, method, or device whatsoever, any of the acts or things prohibited by Paragraph 2 above.

4. That Local 34 and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation with them, be permanently enjoined and restrained:

   (a) From failing to comply with the above-referenced awards;

   (b) From failing to enforce and implement the above-referenced awards; and

   (c) From directly or indirectly engaging in any combination, agreement, arrangement or conspiracy to do the acts, or any of them, so enjoined.

5. That Local 34 and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation with them, be permanently enjoined and restrained from continuing, doing, or attempting to do, or permitting or causing to be continued or done, directly or indirectly, by any means, method, or device whatsoever, any of the acts or things prohibited by Paragraph 4 above.

6. That upon trial of this action, judgment be had against Local 10, and that by such judgment it and others be permanently enjoined and restrained as provided above.

7. That upon trial of this action, judgment be had against Local 34, and that by such judgment it and others be permanently enjoined and restrained as provided above.

8. For PMA's costs of suit incurred herein, including reasonable attorneys' fees; and

9. For such other relief as the Court may deem just and proper.

Dated: October 22, 2013

MORGAN, LEWIS & BOCKIUS LLP

By _____
Eric Meckley
Attorneys for Plaintiff
PACIFIC MARITIME ASSOCIATION